**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SEIFULLAH A. ALI, #A34840, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. PWG-15-3976 |
| SGT. DELROY McCALLA,[1] | : |
| SGT. JOSEPH WATTS, | |
| SGT. STACY HOWE, | : |
| LT. EBONY SHELLY, | |
| LT. AVERY JOHNSON, | : |
| CPL. FLORANNA CALDWELL, | |
| PFC. KEITH FUNDERBURKE, JR., | : |
| DR. MESKEREM ASRESAHEGN, | |
| GELILAH PAULOS, LPN, | : |
| SHELLEY DRAPER, | |
| ABU KALOKOH, | : |
| Defendants. | : |

## MEMORANDUM OPINION

Plaintiff Seifullah A. Ali, an inmate at the Maryland Correctional Institution at Jessup ("MCI-J"), has filed this 42 U.S.C. § 1983 civil rights action seeking money damages and injunctive relief[2] against Dr. Meskerem Asresahegn, Gelilah Paulos, Shelley Draper and Abu Kalokoh (collectively "the Medical Defendants"); and Delroy McCalla, Joseph Watts, Stacy Howe, Ebony Shelly, Avery Johnson, Floranna Caldwell and Keith Funderburke, Jr. (collectively "the Correctional Defendants"). Compl., ECF No. 1; Suppl. Compl., ECF No. 4.[3] Ali claims

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of Defendants' names.

[2] Ali asks this court "to o[r]der the prison to change the policy for this type of injury," presumably to require that those with broken wrists be immediately transported to an outside hospital for assessment and treatment. For reasons apparent herein, a court-imposed policy mandate is not necessary for resolution of Ali's underlying damages claim, and will not be considered here.

[3] This Memorandum Opinion references pagination reflected by the court's electronic filing system, CM/ECF.

that while he was detained at the Prince George's County Detention Center ("PGCDC"), the Medical Defendants failed to provide prompt and adequate treatment for a broken wrist and delayed taking him to a hospital. *Id.* He further claims that the Correctional Defendants did not act on his requests to be taken to the medical unit and continuously denied his requests for grievance forms.[4] *See* Suppl. Compl. 3–5. As a result, Ali was not taken for medical treatment until December 21, 2015, a full month after his original injury, at which time his wrist was fitted in a cast. *Id.* at 5–6. Defendants have filed unopposed[5] motions to dismiss or, alternatively, motions for summary judgment. ECF Nos. 19 and 29. Ali has filed a motion for summary judgment, ECF No. 27, which is opposed, Med. Defs.' Opp'n, ECF No. 32; Corr. Defs.' Opp'n, ECF No. 33.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendants' motions, construed as motions for summary judgment, ARE GRANTED, and Ali's motion for summary judgment or trial IS DENIED.

## Standard of Review

"The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint." *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that plaintiff alleges are true, the complaint fails,

---

[4] Ali also complaints that Draper, the medical unit manager, was involved in denial of the grievance. *Id.*

[5] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk of the Court on April 28, 2016 and May 17, 2016 informed Ali that Defendants had filed dispositive motions; that Ali had seventeen days in which to file written opposition to the motions; and that if Ali failed to respond, summary judgment could be entered against him without further notice. ECF Nos. 22 and 30. Ali has chosen not to respond.

as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "accept[ ] as true the well-pled facts in the complaint and view[ ] them in the light most favorable to the plaintiff." *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) (quoting *Bell Atl. Crop. V. Twombly*, 550 U.S. 544, 570 (2007)).

Defendants' motions, however, rely on materials outside the pleadings, and are construed as motions for summary judgment. *See* Fed. R. Civ. P. 12(d). Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to … the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because Ali is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94

(2007). But, the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## Background

### 1. Ali's Allegations

Ali states that around 8:30 p.m. on November 21, 2015, he fell during a fight with a fellow detainee, injuring his left wrist. *See* Suppl. Compl. 3. Ali was taken to the medical unit by Caldwell, Funderburke, and three other unidentified officers, where he told Nurse Paulos that his wrist was broken and that he could not move it. *Id.* at 3–4. He was told to fill out a sick call slip and was then taken to the segregation unit. *Id.* Ali claims that the Correctional Defendants did not act on his complaints of pain or his requests to see a doctor, and that he remained in segregation housing. *Id.* at 4–5. Ali claims his sick call request was placed on November 24, 2015, but he was not seen until November 27, 2015, when Draper told him he could not receive an x-ray until medical personnel were provided an injury report from correctional staff. *See* Pl.'s Mot. 2, ECF No. 27.

On December 1, 2015, Ali's wrist was x-rayed, which confirmed a fracture.[6] Ali claims that he was told by "Dr. Mesker" [Defendant Meskerem Asresahegn] that he would immediately be taken to have his wrist set in a cast, but the visit to Capitol Orthopedics did not occur until December 21, 2015, thirty days after the injury. Compl. 2. During this time period, Ali alleges that he asked Watts on December 6, 2015 to "call medical to verify my claim," and also asked Johnson for medical treatment on December 7, 2015 to no avail. Suppl. Compl. 4–5.

---

[6] Ali states the x-ray "showed a colles fracture with ulnar styloid involvement," which he believes constitutes two fractures. Pl.'s Mot. 2.

4

Consequently, on December 10, 2015, Ali's left hand swelled as a result of handcuffing, but Sergeant Howe refused to contact the medical unit, stating that they were busy with lab work and Ali should wait for the next shift. *Id.* at 5. Ali met with Draper and Dr. Asresahegn on December 17, 2015, who told him that it was against medical policy to take detainees to a hospital and that he would have to wait for an appointment with a private orthopedist. *Id.* Ali states that he suffered another broken bone "because [he] was not in a cast and was placed in a segregation unit that required [him] to be handcuffed during recreational time." Pl.'s Mot. 1. When the cast was removed on February 12, 2016, Ali was told a crack remained in the ulnar styloid area. *Id.* at 3. As of May 12, 2016 (the date of his summary judgment motion), the wrist was not totally healed. *Id.* In sum, Ali claims was denied housing in the medical unit and that he suffered more damage to the wrist because it was not stabilized. He further states that the Correctional Defendants violated his rights when they refused to provide him grievance forms to complain of mistreatment by medical personnel.[7] *See* Compl. 3.

### 2.   **Medical Defendants' Assertions**

The Medical Defendants state that Ali "suffered a mild Colles fracture with ulnar styloid involvement of his left wrist." Asresahegn Aff. ¶ 6, Med. Defs.' Mot. Ex. A, ECF No. 19-2. Ali's "wrist was set in a cast for seven weeks and healed appropriately." *Id.* Once the cast was removed, both "the orthopedic specialist and [Dr. Asresahegn] demonstrated range of motion exercises to [Ali]," who has since "fully healed from the fracture and regained full range of motion in his wrist." *Id.*

Dr. Asresahegn provided the following medical treatment history for Ali. On November 21, 2015, Nurse Paulos saw Ali after an altercation. *Id.* ¶ 8. Ali reported no injuries at that

---

[7] In his Supplemental Complaint, Ali indicates these denials occurred on November 21, 23 and 26 and December 11, 2015. Suppl. Compl. 2.

time. Paulos noted Ali's elevated blood pressure and scheduled him for a blood pressure check in three days. The medical records shows no complaints of wrist pain, but, even if he did so complain, Dr. Asresahegn contends that it is appropriate to wait until swelling and inflammation decreases to assess the severity of a wrist injury. *Id.* ¶ 8.

On November 24, 2015, Ali requested care for his wrist. *Id.* ¶ 9. A nurse saw him three days later and noticed that Ali's "hand grips were unequal and weak due to his swelling and pain." *Id.* As a result, "the nurse prescribed Naproxen, a non-steroidal anti-inflammatory drug (NSAID) that treats pain and inflammation, and instructed [Ali] to contact the medical unit if new symptoms developed or if his current symptoms worsened." *Id.* After being notified of Ali's condition, Asresahegn ordered an x-ray of Ali's wrist and a follow-up examination with the x-ray results. *Id*.

On November 30, 2015, Asresahegn "reviewed the x-ray result and submitted a non-emergency consultation request for an orthopedic consultation." *Id.* ¶ 10. Asresahegn recommended a "short arm cast, elevation, Tylenol, and a follow-up within four weeks," which was approved on December 9, 2015. *Id.*

On December 18, 2015, Asresahegn saw Ali for complaints of wrist pain. *Id*. ¶ 11. She noted that Ali was scheduled to see an orthopedic specialist, and "prescribed a continuation of his NSAID regimen until he could be seen by the specialist." *Id*.

On December 21, 2015, Ali was seen by an orthopedic specialist. *Id*. ¶ 12. "The specialist noted minimal soft tissue swelling and no bruising, discoloration, asymmetry, or deformity." *Id.* Another x-ray taken by the specialist "showed a completed but nondisplaced fracture of the distal radius and ulnar styloid with some early callus formation," a sign of bone

healing. *Id.* Because Ali "reported tenderness in the area of fracture, he was placed in a short arm cast." *Id.*

On January 4, 2016, Ali was seen for a health assessment, where he did not complain of any discomfort *Id.* ¶ 13. On February 2, 2016, Ali requested to have his cast removed. *Id.* ¶ 15. On February 12, 2016, he was seen by the orthopedic specialist, who removed the cast. *Id.* ¶ 16. After removing the cast, Ali reported "residual tenderness and pain with range of motion, which was consistent with his prolonged casting." *Id.* An x-ray showed that Ali was "almost completely healed and did not require further casting." *Id.* The specialist and Asresahegn also showed Ali range of motion exercises and symptomatic treatment. *Id.*

The medical record indicates that on two separate occasions following the removal of his cast, February 20 and March 29, 2016, Ali was seen by medical staff at PGCDC for complaints of pain in his wrist. However, after examining his wrist on both occasions no further treatment was required. *Id.* ¶¶ 18–19.

Based on this record evidence, the Medical Defendants argue that Ali received appropriate treatment for his wrist injury, that the care he received met or exceeded the standard of care exercised by like medical professionals under similar surrounding circumstances, and that any delay in treatment or treatment provided to Ali at PGCDC for his injured wrist did not cause any injury.

### 3. Correctional Defendants' Assertions

The Correctional Defendants do not address the instances where Ali claims they refused to notify medical personnel of his discomfort and concerns about his wrist injury. Instead, they contend that they were not involved in providing Ali medical care, and thus cannot be held liable for any breach of care under the Eighth Amendment. Defs.' Mot. to Dismiss 3-4, ECF No. 29.

They further argue that Ali's claim that Howe, Watts, Shelly and Johnson failed to facilitate or grant his grievance request fails to state a constitutional claim. *Id.* at 4.

### **Analysis**

It appears that at the time of his injury, Ali was a pretrial detainee. The constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and scrutiny under the Eighth Amendment "is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003). In the context of delay or denial of medical care, an Eighth Amendment violation arises when the actions of a defendant, or the failure to act, amount to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). Deliberate indifference to a serious medical need requires proof that the prisoner was objectively suffering from a serious medical need and that the prison staff was subjectively aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

At its core, Ali's complaint is that he was not immediately sent to an outside orthopedist for casting of a wrist fracture and housed in the medical unit, and that his cast was removed too soon. Without a cast and special housing, his ability to heal and/or defend himself could have been compromised by fellow detainees. Ali also points out that on several occasions, corrections staff did not respond to his requests that they intercede on his behalf with medical personnel.

Although he did not receive the care he believed was warranted, the uncontroverted medical record and affidavit demonstrate that Ali received adequate treatment of his injury and that the relatively minor, non-displaced fracture healed without complication. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir.1970)). There are no exceptional circumstances alleged in this case. Further, because I find that the medical defendants were not deliberately indifferent to the Plaintiff's wrist injury, the correctional officers, by necessity, were not either, as they did not make any decisions about the care that he received. And Plaintiff's claim that the correctional officers failed to provide him with a grievance form to make a complaint about his medical care fails to state a constitutional claim, and, in any event, Plaintiff has alleged no injury as a result of the alleged failure. *See Blackwell v. Webb*, No. RDB-13-1947, 2014 WL 2916475, at *8 (D. Md. June 25, 2014).

Accordingly, summary judgment shall be entered in favor of all Defendants by separate order to follow.

Dated: February 28, 2017　　　　　　　　　　_____/S/_____
　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge